NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------
ELEANOR HALL,                   :
                                :
            Plaintiff,          :     Civ. No. 05-1695 (DRD)
      v.                        :
                                :
SERV CENTERS OF                 :
NEW JERSEY, INC., et al.        :     **O P I N I O N**
                                :
            Defendants.         :
------------------------------------------

Paula M. Dillon, Esq.
KRUMHOLZ DILLON, P.A.
574 Summit Avenue
Jersey City, New Jersey 07306

*Attorney for Plaintiff*


Aileen F. Droughton, Esq.
TRAUB EGLIN LIEBERMAN STRAUS L.L.P.
Metroplex Drive, Suite 203
Edison, New Jersey 08817

*Attorney for Defendants*


**DEBEVOISE, Senior District Judge**

Plaintiff, Eleanor Hall, filed a complaint against her former employer, Defendant, SERV Behavioral Health System, Inc., and its affiliate, Defendant, SERV Centers of New Jersey, Inc. (collectively, "SERV"), in the Superior Court of New Jersey, Law Division, Hudson County, alleging violations of the Family Medical Leave Act ("FMLA") and the New Jersey Law Against

1

Discrimination ("NJLAD"). Thereafter, Defendants removed the matter to this court.

Presently before the court is Defendants' motion for summary judgment. For the reasons set forth below, that motion will be granted and Plaintiff's complaint will be dismissed with prejudice.

## I.  FACTUAL BACKGROUND

SERV consists of a group of non-profit organizations that assist people who are suffering from mental illness, addiction, behavioral problems, and developmental disabilities. Plaintiff began her employment with SERV in January of 1988 as a secretary. She was promoted to executive secretary in September of that year and then to office manager in July of 1994. In June of 1995 she was promoted such that she worked part-time as office manager in Hudson County and part-time as facility manager in Passaic County. In November of 1996 Plaintiff was promoted to the position of regional facilities manager for Passaic and Hudson Counties. In February of 1998 Plaintiff became the full-time facilities manager for Hudson County. In July of 2001 Plaintiff was promoted to full-time facilities manager for Hudson and Passaic Counties.

In June of 2003 SERV hired Byron Reid as facilities manager for Hudson County and thus, Plaintiff's area of responsibility was reduced to Passaic County alone, though Plaintiff states that even after Mr. Reid was hired she was responsible for overseeing the construction of a 5,000 square foot office in Hudson County. Plaintiff remained in her role as facilities manager for Passaic County until she was terminated on July 28, 2004.

As a facilities manager Plaintiff was responsible for the operation and maintenance of SERV's buildings and vehicles in the county or counties to which she was assigned. Plaintiff states that "[a]t one point she was responsible for approximately two group homes, nine

condominiums, ten foster care sites, and ten to twelve AIM for Success sites [individual apartment units] in Passaic County, and 20 sheltered care homes in Hudson County." (Pl.'s Statement of Facts ¶ 9). Plaintiff further states that "[b]y 2003, the number of individual apartments [she] was responsible for in Hudson County had increased to approximately 14 and the number of group homes had increased to four. Id. In her deposition testimony, Plaintiff stated that she did not know how many facilities SERV operated in other counties. (Hall Dep., Nov. 28, 2005, at 30:23 - 31:5).

SERV states that it currently operates in five counties and employs four facilities managers. The following table summarizes SERV's description of its current facilities managers, the county or counties for which they are responsible, the number of buildings and/or vehicles for which they are responsible, and the number of clients housed in each type of facility:

|  | County | Rental Apartments # of Units/# of Clients | Group Homes # of Units/# of Clients | Offices | Vehicles |
|---|---|---|---|---|---|
| Reid | Hudson | 12 units/21 clients | 2 units/11 clients | 1 | 8 |
|  | Passaic | 10 units/17 clients | 4 units/14 clients | 1 | 6 |
|  | Total | 22 units/38 clients | 6 units/25 clients | 2 | 14 |
| Butler | Union | 24 units/42 clients | 12 units/46 clients | 1 | 19 |
| Johnson | Middlesex | 43 units/91 clients | 9 units/30 clients | 1 | 21 |
| Seunath | Mercer | 28 units/69 clients | 14 units/27 clients | 3 | 26 |

SERV states that the number of properties and vehicles currently in Hudson and Passaic

3

Counties are approximately the same as they were when Plaintiff was employed as facilities manager. SERV further states that during the final fourteen months of Plaintiff's employment, when Plaintiff was only managing the facilities in Passaic County, she was responsible for approximately half as many facilities as any other facilities manager. Plaintiff neither admits not denies SERV's statements as to the number of facilities for which she was responsible and her relative workload compared to the other facilities managers.

Plaintiff suffers from a medical condition defined as "major depression and anxiety." Her condition causes her to experience headaches, crying spells, decreased appetite, anxiety, nervousness, hyperactivity, difficulty sleeping and difficulty swallowing. The seriousness of her condition has varied over the years. At times, she has seen a psychiatrist as frequently as twice a month and she has taken various prescription drugs, including Effexor, Klonopin, Clonazapren, Prozac, and Xanax. Plaintiff states that her condition is aggravated by stress and she believes that work-related stress caused her symptoms of depression to worsen.

As a result of her condition, Plaintiff missed work on several occasions. First, Plaintiff missed work from February 8, 2000 to February 23, 2000 and again from March 13, 2000 to March 24, 2000. SERV states that it provided Plaintiff with the documents necessary for obtaining leave under the FMLA but that she never returned those documents. Plaintiff states that those absences were covered by her accumulated sick and vacation time. Next, Plaintiff was out of work between September 9, 2002 and December 9, 2002. The parties agree that under the FMLA Plaintiff was entitled to a leave of absence for that period.

Defendant contends that after returning to work on December 9, 2002, and until March 14, 2003, Plaintiff was out of work for over 25% of the time and used 156 hours of unscheduled

sick and vacation time. On March 25, 2003, Plaintiff's direct supervisor, SERV's chief operating officer, Jeff Nearby, issued an Employee Corrective Action Report ("CAR") addressing Plaintiff's excessive absenteeism and her failure to timely complete the responsibilities of her position. That report states that Plaintiff needed to improve her performance by coming to work on a regular basis and completing her assignments on time. (Canney Aff. Ex. I).

Plaintiff denies that she used 156 hours of unscheduled sick and vacation time for that period. However, Plaintiff's time sheets, nearly all of which bear her signature, show that she took 20 hours of sick/vacation/personal time in the last week of December 2002, eight hours of sick/vacation/personal time in January of 2003, and 72 hours of sick/vacation/personal time in February of 2003. Thus, Plaintiff used 100 hours of sick/vacation/personal time between the last week in December and the end of February.

Additionally, Plaintiff's time sheet for the weeks of March 10, 2003 to March 14, 2003 and March 17, 2003 to March 21, 2003 indicate that she was only paid for 24 hours rather than the 80 hours typically worked in a two week period. While those sheets do not indicate whether Plaintiff used any sick/vacation/personal time to cover the balance, they nonetheless show that Plaintiff was out of work for 56 hours in those two weeks. Therefore, despite Plaintiff's denial, her time sheets show that from the time she returned to work on December 9, 2002, through the week ending March 21, 2003, Plaintiff was out of work for a total of 156 hours (not including paid holidays). (Canney Aff. Ex. M).

During that same period of time, Plaintiff continually asked her supervisor to hire a part-time assistant to work 20 hours per week in order to help her with her duties. No such assistant

5

was ever hired but in June of 2003 SERV hired Byron Reid as facilities manager of Hudson County. Thus, although Plaintiff did not receive a part-time assistant, her workload was significantly reduced once Mr. Reid was hired.

On June 16, 2003, Mr. Nearby issued another CAR addressing Plaintiff's performance deficiencies, including her failure to come into work and her failure to submit paperwork on time. (Canney Aff. Ex. L).

SERV admits that Plaintiff's attendance improved after she received the above mentioned CARs, though she was absent from December 8, 2003 to December 12, 2003 and December 29, 2003 to January 8, 2004. (Canney Aff. Ex. N).

SERV cites several other instances in which it had difficulty with Plaintiff. In December of 2003 SERV's President and Chief Executive Officer, Gary Van Nostrand, was copied on several emails between Plaintiff and one of SERV's landlords, Bruce Gudin. From those emails it is clear that Plaintiff had engaged in a personal relationship with Mr. Gudin and that he was attempting to sever personal ties between the two of them. Mr. Gudin stated that Plaintiff was harassing him and that if she did not stop he would bring legal action against her and SERV. In response to those emails, Mr. Van Nostrand instructed Plaintiff that she was not allowed to contact Mr. Gudin while she was at work. (Van Nostrand Aff. Ex. B). Despite that warning, Plaintiff contacted Mr. Gudin by email on Wednesday, January 21, 2004, during business hours. Id. Upon receiving that email, Mr. Gudin contacted Mr. Van Nostrand once again to complain about Plaintiff and ask that she be prevented from contacting him further. Id.

On June 9, 2004 the State of New Jersey Department of Human Services, Office of Licensing performed an inspection on one of SERV's Passaic County properties. In response to

that inspection SERV was required to submit a Remediation Report to the State.  Preparing such a report was part of Plaintiff's regular duties and she had prepared many such reports in the past.  Plaintiff and SERV disagree on the circumstances surrounding this event but it is clear that Plaintiff was asked to complete the report and submit it to her superiors.  SERV argues that Plaintiff failed to do so, despite repeated requests.  Plaintiff states that she was terminated before she had a chance to complete the report.

     In July of 2004, shortly before she was terminated, Plaintiff's relationship with another employee, Kim DeRosa, deteriorated to such a degree that Mr. Van Nostrand intervened.  He advised both employees that their conduct was detrimental to the organization and that they would both be terminated if they could not work out their differences.

     Plaintiff was terminated on July 28, 2004.

## II. DISCUSSION

**Standard of Review**

     Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is

to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255). But where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (U.S. 1986).

**Violation of the Family Medical Leave Act**

Plaintiff claims that SERV interfered with her rights under the FMLA when it terminated her in retaliation for taking sick leave. To establish a prima facie case of such interference Plaintiff must show that: (1) she took FMLA leave; (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to that leave. See Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135, 146 (3d Cir. 2001).

The parties agree that Plaintiff took FMLA leave between September 9, 2002 and December 9, 2002. They also agree that she suffered an adverse employment decision when she was terminated on July 28, 2004. But the timing of those events, i.e., the nineteen month period between them, weighs heavily against finding a causal relationship.

Plaintiff contends that she took several other sick days shortly before she was terminated and that the proximity of those events demonstrates a causal relationship between her absences and her termination. She argues that those absences should have been covered under the FMLA but that she never completed an FMLA application for those days because SERV never provided her with the necessary paperwork. Specifically, Plaintiff argues that her absences on July 22 and 23 of 2004 should have been covered under the FMLA. But Plaintiff's time sheet for the week

8

ending July 23 shows that her time off was taken as vacation time. Plaintiff signed that time sheet and her signature appears directly below the following statement: "This is a true and accurate allocation of my time worked." Thus, Plaintiff represented that she took vacation, not sick leave, on July 22 and 23 of 2004.

Under the FMLA an employee must request leave or provide notice to the employer, along with a reason for requesting time off. "An employee gives his employer sufficient notice that he is requesting leave for a FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA . . . has occurred." Cavin v. Honda of America Manuf., Inc., 346 F.3d 713, 723 (6th Cir. 2004).

In the present case, Plaintiff has provided no evidence that she requested FMLA leave for July 22 and 23. Nor has she submitted evidence that she provided SERV with enough information for it to conclude that Plaintiff was suffering from a serious medical condition. On the contrary, her signed time sheet demonstrates that she represented to SERV that she was taking vacation time rather than sick leave. As such, Plaintiff's argument that her absences on July 22 and 23 should have been considered FMLA leave, and that the close proximity of those absences to her termination demonstrate a causal relationship between them, is unsupported by the evidence.

Plaintiff's time sheets show that she took other days off from work in the months leading up to her termination but there is no evidence that Plaintiff informed SERV that those absences were due to a serious health condition. The record contains only two doctors' notes that Plaintiff submitted to SERV to explain her absences. The first indicates that Plaintiff was under a doctor's care and on sick leave from December 8, 2003 to December 12, 2003. It provides no

9

explanation of her illness. (Pl.'s Br. Ex. L).

The second indicates that Plaintiff was under a doctor's care from December 29, 2003 to January 8, 2004. It lists the nature of her illness as "viral syndrome and acute tracheobronchitis." (Canney Aff. Ex. N). Although such an illness may merit FMLA leave in other cases, Plaintiff only argues that she was entitled to FMLA leave for her medical condition of major depression and anxiety. She does not argue that she was denied leave for tracheobronchitis.

For the above reasons, Plaintiff has failed to show that she engaged in a protected activity other than taking FMLA leave between September and December of 2002. As that leave of absence occurred more than nineteen months before Plaintiff was terminated, it is not causally related to her termination. Thus, SERV's motion for summary judgment with respect to Plaintiff's FMLA claim will be granted.

**Violation of the New Jersey Law Against Discrimination**

To survive a motion for summary judgment in a claim for unlawful discrimination under the NJLAD a plaintiff is required to establish a prima facie case of discrimination. Then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged discriminatory conduct. Should the defendant offer such a reason, the plaintiff will survive summary judgment by submitting evidence that the defendant's justification is merely a pretext. See McDonnell Douglas Corp. v Green, 411 U.S. 792 (1973).

To establish a prima facie case when a plaintiff has alleged that her termination was based on unlawful disability discrimination, the plaintiff must prove "(1) that [s]he was handicapped; (2) that [s]he was performing h[er] job at a level that met h[er] employer's legitimate expectations; (3) that [s]he nevertheless was fired; and (4) that the employer sought someone to

perform the same work after [s]he left." Viscik v. Fowler Equip. Co., 173 N.J. 1 (N.J. 2002).

For purposes of the present motion, SERV does not contest Plaintiff's assertion that she was handicapped. Additionally, there is no question that Plaintiff was discharged and that SERV replaced her with another employee. Thus, the only element at issue is whether Plaintiff was performing her job at a level that met SERV's legitimate expectations.

There is substantial evidence in the record showing that Plaintiff was failing to meet SERV's expectations. In the CAR dated March 25, 2003, Plaintiff's supervisor, Mr. Nearby, noted Plaintiff's excessive absenteeism and stated that it was impossible for Plaintiff "to fulfill the responsibilities of [her] . . . position without consistent and reliable attendance." (Canney Aff. Ex. I). He further warned Plaintiff that such absenteeism could result in her termination. Id. Similarly, in the CAR dated June 16, 2003 Mr. Nearby reprimanded Plaintiff once again, noting her continued absenteeism, insubordination, and failure to fulfill her duties in a timely and satisfactory manner. The report states that Plaintiff would not receive any further warnings and that she could be fired if her performance did not improve. (Canney Aff. Ex. L).

In a Performance Evaluation dated June 30, 2004, Plaintiff's supervisor, Dominic Longo, indicated that Plaintiff was meeting her job requirements in all but two areas. While that report shows that on that date, Plaintiff was, for the most part, fulfilling her responsibilities, it also indicates that Plaintiff's attendance was still a problem. The report shows that Plaintiff was not meeting her job's "Core Competency" requirements of "[c]onsistently arriv[ing] at work on time" and "[m]inimiz[ing] absences and giv[ing] advance notice for lateness and other absences." (Pl.'s Br. Ex. T). Mr. Longo also commented that Plaintiff "need[ed] to be better at meeting deadlines (ex. processing invoices, timecards) [sic]" and "should work on improving her

attendance record." Id.  Notably, Plaintiff's time sheets show that she was absent from work on five of the twenty workdays between the June 30, 2004 Performance Evaluation and her termination on July 28, 2004; thus averaging more than one absence per week in the four weeks preceding her termination.

The aforementioned CARs and Performance Evaluation show that SERV considered regular attendance to be a vital job requirement for Plaintiff's position and that it expected Plaintiff to reduce her absenteeism.  As there is substantial evidence indicating that Plaintiff failed to meet SERV's expectations in that regard, Plaintiff has failed to establish a prima facie case of disability discrimination.

Even if Plaintiff had established a prima facie case of disability discrimination her claim must fail because SERV had legitimate, non-discriminatory reasons for terminating her.  In addition to Plaintiff's excessive absenteeism, Plaintiff was involved in several altercations in the months preceding her termination.  First, in January of 2004, Mr. Van Nostrand directed Plaintiff to cease contacting one of SERV's landlords, Mr. Gudin, while she was at work, because Mr. Gudin had complained that Plaintiff was harassing him.  Plaintiff failed to abide by that instruction.  Such behavior was not only insubordinate, it resulted in Mr. Gudin threatening SERV with legal action.

Second, in July of 2004, shortly before she was terminated, Plaintiff's relationship with Ms. DeRosa deteriorated to such a degree that Mr. Van Nostrand advised both employees that their conduct was detrimental to the organization and that they would be terminated if they could not work out their differences.

In addition to those altercations, Plaintiff failed to submit the Remediation Report when

12

her supervisors asked for it in July of 2004, immediately before her termination. Plaintiff disputes Defendant's allegation that she was instructed to complete the report by July 9, 2004, and further argues that the State would have accepted the report, without penalizing SERV, even if it was submitted some time after Plaintiff's termination. However, it is undisputed that when Plaintiff's supervisor, Mr. Longo, asked her to produce the report, she told him that she had completed a handwritten version and would submit it once she created a typed version. But when Mr. Longo asked Plaintiff to produce the handwritten version she was unable to do so.

Such examples of insubordination, unprofessional conduct, and failure to complete assignments, constitute legitimate, non-discriminatory reasons for terminating Plaintiff. There is no evidence that would support a finding that these proffered reasons are pretextual.

**Disability discrimination based on a failure to accommodate**

Plaintiff's complaint does not allege a failure to accommodate but in her brief in opposition to this motion Plaintiff argues that SERV violated the NJLAD by failing to accommodate her disability. Plaintiff testified at her deposition that, upon returning from her FMLA leave of absence in December of 2002, she asked her supervisor for a part-time assistant "to relieve some of the stress that was on [her] so that [she] wouldn't wind up back in the hospital again." (Hall Dep., Nov. 28, 2005, 127:18-21).

Although SERV did not hire an assistant for Plaintiff, it reduced her workload by hiring another facilities manager to take over responsibility for Hudson County. As a result, Plaintiff's responsibilities were significantly less than those of the facilities managers for Union, Middlesex, and Mercer Counties. Such an accommodation, while not what Plaintiff requested, was more than adequate. Plaintiff's requested accommodation, on top of the accommodation SERV

already made, would have been unreasonable and would have imposed an undue hardship on SERV as it would require them to pay one full-time employee, Plaintiff, and one part-time employee, her assistant, to do approximately half as much work as the facilities managers for Union, Middlesex, and Mercer Counties were performing on their own, without an assistant. Thus, Plaintiff has not shown that SERV failed to reasonably accommodate her disability.

**Disability discrimination based on hostile work environment**

Although not alleged in her complaint, and not formally argued in her opposition to the present motion, Plaintiff's brief purports to state a claim for disability discrimination based on a hostile work environment by continually stating that Kim DeRosa harassed Plaintiff. But nearly all of the alleged harassment is benign. For example, Plaintiff alleges that Ms. DeRosa made the following comments to her: "I'm not here to take your phone calls." "You're out too much." "Did you check your mailbox?" "Did you check your email?" (Hall Dep. Nov. 28, 2005, 105:11-12 and 109:20-23). The only alleged comment that even relates to Plaintiff's disability is Ms. DeRosa's alleged statement to Plaintiff that "she's not [Plaintiff's] therapist." (Hall Dep. Nov. 28, 2005, 105:11). Such a statement, even if it was intended to disparage Plaintiff for being disabled, is not enough to create a hostile work environment. Thus, any claim of disability discrimination based on a hostile work environment is unsubstantiated.

As Plaintiff has failed to establish a prima facie case of disability discrimination with regard to her termination, and SERV has provided legitimate, non-discriminatory reasons for her termination; and as Plaintiff has not shown that SERV failed to reasonably accommodate her disability; and as Plaintiff has failed to demonstrate the existence of a hostile work environment; SERV's motion for summary judgment will be granted with respect to Plaintiff's claim under the

NJLAD.

### III.  CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment will be granted and Plaintiff's complaint will be dismissed with prejudice.

/s/ Dickinson R. Debevoise

DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: August 14, 2006